**IN THE UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JACKIE BEARD ROBINSON,<br>Delray Beach, FL<br><br>Plaintiff,<br>v.<br><br>NBC UNIVERSAL CABLE<br>Comcast Building<br>30 Rockefeller Plaza #270E<br>New York, NY 10112<br><br>And<br><br>ANDY COHEN<br>NBC Universal Cable<br>300 New Jersey Avenue N.W.<br>Washington, D.C. 20001<br><br>And<br><br>MELISSA GORGA<br>8 Pond View<br>Montville, NJ 07045<br><br>And<br><br>DOROTHY TORAN<br>Sirens Media<br>8403 Colesville Road<br>Silver Spring, MD 20910<br><br>Defendants. | **COMPLAINT** |

## I. INTRODUCTION

Plaintiff Jackie Beard Robinson ("Plaintiff"), by counsel, sues the Defendants, NBC Universal Cable, Andy Cohen, Melissa Gorga, and Dorothy Toran ("Defendants" unless individually named) acting in concert, jointly and severally, in this civil action for general defamation, defamation per se, defamation by implication, intentional infliction of emotional

distress, and tortious interference with prospective advantage, as a result of Defendants causing actual damages, compensatory damages, and giving rise to punitive damages, including continuing and aggravated harm to Plaintiff's professional, business and personal reputation and livelihood. As grounds therefore, Plaintiff alleges as follows:

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 under diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds $75,000.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of property that is the subject of the action is situated.

## III. PARTIES

3. Jackie Beard Robinson ("Robinson" or "Plaintiff") is an individual, natural person, who at all material times was and is a citizen of Florida.

4. NBC Universal is "one of the world's leading media and entertainment companies in the development, production, and marketing of entertainment, news and information to a global audience." *See* http://www.nbcuniversal.com/who-we-are. It's principle place of business and headquarters is located at 30 Rockefeller Plaza, New York, NY 10112. NBC Universal owns NBC Universal Cable, which operates Bravo TV, an American cable and satellite television network, featuring "The Real Housewives of New Jersey." NBC Universal does substantial business in this district and in the state of Florida, which is the state with one of NBC Universal's largest viewerships.

///

5. Andy Cohen ("Cohen") is an individual, natural person, who at all material times was and is a citizen of New York. Cohen is an American talk show and radio personality who hosts the Bravo TV nightly series "Watch What Happens Live with Andy Cohen." He serves as an executive producer of "The Real Housewives" franchise, including "The Real Housewives of New Jersey." Cohen does substantial business in this district and in the state of Florida, which is the state with one of Cohen's largest viewerships.

6. Melissa Gorga ("Gorga") is an individual, natural person, who at all material times was and is a citizen of New Jersey. Gorga is an American reality television personality and a member of the cast of "The Real Housewives of New Jersey." Defendant Gorga knew or had reason to know that her defamatory statements would be published in Florida. Defendant Gorga does substantial business in Florida and films "The Real Housewives of New Jersey" in Florida frequently.

7. Dorothy Toran ("Toran") is an individual, natural person, who at all material times was and is a citizen of Maryland. Toran is the executive in charge of production at Sirens Media and oversees production and cast for all of Sirens Bravo series, including "The Real Housewives of New Jersey." Defendant Toran knew or had reason to know that her ratification and participation in the defamatory statements would be published in Florida. Defendant Toran does substantial business in Florida.

**IV. STANDING**

8. Plaintiff has standing to bring this action because she has been directly affected and victimized by the unlawful conduct complained herein. Her injuries are proximately related to the conduct of Defendants, each and every one of them.

///

## V. FACTS COMMON TO ALL COUNTS

9. "The Real Housewives of New Jersey" is filmed frequently in Florida, with two of its series members residing in Florida.

10. Plaintiff Jackie Beard Robinson is an entrepreneur and international fashion influencer. She is also a blogger and style consultant.

11. Plaintiff has an extensive background in marketing and sales.

12. As a prominent member of the South Florida community and in this district in particular, Plaintiff was well respected in her community and revered for her innate fashion sense, style, and community outreach.

13. Plaintiff owned a clothing store named Ginjer in Delray Beach, Florida from 2011 to 2015.

14. In the spring of 2014, Defendant Gorga and her husband walked into Ginjer and met Plaintiff. Plaintiff recognized Defendant Gorga and gave her free merchandise to wear for the series "The Real Housewives of New Jersey."

15. Plaintiff and Defendant Gorga maintained in contact until the following August in 2015 when Defendant Gorga called Plaintiff on the telephone and expressed that she wanted to open a store with Plaintiff.

16. On October 22, 2015, Plaintiff and Defendant Gorga signed an Operating Agreement naming Plaintiff as the sole manager of Envy by Melissa Gorga, LLC ("Envy"), a New Jersey Limited Liability Company.

17. Envy operated a boutique clothing store in Monclair, New Jersey and was an integral part of last season's Defendant NBC Universal Cable's "The Real Housewives of New Jersey."

18. Plaintiff and Defendant Gorga were business partners in Envy up until December 31, 2016.

19. On the morning of January 1, 2017, during daylight hours, Plaintiff went to Envy and gathered all of her belongings after she discovered that Defendant Gorga misappropriated over $37,000 from Envy without authorization, among other things.

20. The merchandise belonged to – and was owned by – Plaintiff.

21. On January 4, 2017, after Plaintiff removed only her merchandise from Envy, Brett Hitchner (Defendant Gorga's counsel) sent an email correspondence to Arthur Grossman, a member of Mandelbaum Salsburg, the firm representing Plaintiff at the time, that read: " . . . my client [Defendant Gorga] acknowledges and accepts (1) your client's withdrawal from the company [Envy] as of December 31, 2016; (2) that your client may sell off and retain the proceeds for the items that your client has taken from the Envy store; (3) that my client will be responsible for the company's operating expenses from and after January 1, 2017; and (4) that my client and your client will thereafter have no further obligations to each other with respect to the company."

22. Defendant Gorga accepted that Plaintiff may "sell off and retain the proceeds for the items that [Plaintiff took] from the Envy store" after Plaintiff retrieved her merchandise.

23. Five days later, on January 9, 2017, Mr. Tanella (then counsel for Plaintiff) sent an email to Mr. Hitchner (counsel for Defendant Gorga) at 7:12 PM, stating: ". . . it has been brought to my attention that your client [Defendant Gorga] has made false and slanderous comments about my client. These actions must cease and desist immediately. Should your client continue to make such slanderous statements my client shall be compelled to consider legal action against your client for slander and defamation."

24. Defendant Gorga knew, and was on actual notice, not to defame Plaintiff since around January 9, 2017, when Mr. Tanella placed her attorney on notice that the slanderous and defamatory statements she publicly made "must cease and desist immediately."

25. On February 23, 2017, Mr. Tanella again warned Defendant Gorga's counsel Mr. Hitchner in a formal letter: "[w]e have serious concerns, considering your client's [Defendant Gorga] past behavior, that she will defame Ms. Robinson through social media, particularly during production of "The Real Housewives of New Jersey" series. Please be advised that, in the event your [sic] Ms. Gorga defames Ms. Robinson, either directly or indirectly, we have been instructed to take immediate legal action against your client, wherein our client will seek restraints, damages, costs and attorneys' fees."

26. Similarly, on February 23, 2017, Mr. Tanella warned NBC Universal in a formal letter: "[t]he purpose of this correspondence is to notify NBC Universal and all entities [and persons] involved with the production of the Series ["The Real Housewives of New Jersey"] that we have placed Ms. Gorga on notice that she is to refrain from making any defamatory statements, directly or indirectly, about Ms. Robinson through social media, including in connection with the Series. In the event that Ms. Gorga makes any such defamatory statements concerning our client through the broadcast of the Series or any promotional aspect of the Series, please be advised that we intend to take immediate legal action against your company, Ms. Gorga and/or any person or entity who aids Ms. Gorga in making such defamatory statements, wherein our client will seek restraints, damages, costs and attorneys' fees."

27. Thus, Defendants NBC Universal, Andy Cohen, and Dorothy Toran were on actual notice since February 23, 2017 that they would be haled into court and held liable for

defamation and related causes of action if any person or entity aided Defendant Gorga in making false or defamatory statements about Plaintiff.

28. On October 4, 2017, during the airing of "The Real Housewives of New Jersey," Defendant Gorga, acting in concert with the other Defendants, jointly and severally, falsely, recklessly, grossly negligently, and/or negligently stated that Plaintiff "snuck in in the middle of the night and took all the clothes."

29. Further, on October 4, 2017, during the airing of "Watch What Happens Live with Andy Cohen," Defendant Cohen, acting in concert with the other Defendants, jointly and severally, falsely, recklessly, grossly negligently, and/or negligently stated, "wow, so, that lady [Plaintiff] wound up kinda ripping you off?" Defendants published into this district that Plaintiff had stolen merchandise and acted criminally.

30. On October 4, 2017, Defendant Gorga, acting in concert with the other Defendants, jointly and severally, responded "yes" and then furthered the falsehood that Plaintiff snuck into Envy in the middle of the night and stole clothing.

31. Plaintiff removed her merchandise and other materials from Envy during the morning of January 1, 2017, in broad daylight, not during "the middle of the night." The statement that Plaintiff "snuck in in the middle of the night" is false, misleading, reckless, grossly negligent, negligent and made with actual malice.

32. The clothing and other materials that Plaintiff removed during broad daylight on the morning of January 1, 2017 belonged to – and were owned by – Plaintiff. The statement "that lady [Plaintiff] wound up kinda ripping you off" is false and misleading and made with actual malice.

33. Defendants, each and every one of them, acting in concert, jointly and severally, knew or should have known that Plaintiff did not steal and commit a crime by sneaking into Envy in the middle of the night to retrieve her merchandise.

34. Defendants, each and every one of them, acting in concert, jointly and severally, knew or should have known that Plaintiff owned the merchandise and that an agreement between Defendant Gorga and Plaintiff allowed Plaintiff to retain or sell her merchandise.

35. Plaintiff gave timely notice to each and every Defendant, pursuant to Florida Statute § 770.01, demanding a retraction and correction of the false and misleading statements set forth in this complaint. Each and every Defendant refused to retract and/or correct the alleged false and misleading statements; thereby confirming and ratifying these false and misleading statements as their own. Their inaction has compounded the damages alleged in this complaint as the false and misleading statements continue to be published and republished in this district, the United States, and around the world.

## VI. CAUSES OF ACTION

**<u>FIRST CAUSE OF ACTION</u>**
**(General Defamation)**
**Each and Every Defendant**

36. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

37. The Defendants, together and each of them acting in concert, jointly and severally, and individually, have defamed Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff which they knew or should have known to be false and misleading.

38. Defendants' defamatory statements were not privileged.

39. To establish general defamation, a plaintiff need only show that a person or entity (1) published a false statement, (2) about another person; (3) to a third party; and (4) the falsity of the statement caused injury to the other person.

40. On October 4, 2017, during the airing of "The Real Housewives of New Jersey," Defendant Gorga, acting in concert with the other Defendants, jointly and severally, falsely, recklessly, grossly negligently, and/or negligently stated that Plaintiff "snuck in in the middle of the night and took all the clothes."

41. Further, on October 4, 2017, during the airing of "Watch What Happens Live with Andy Cohen," Defendant Cohen, acting in concert with the other Defendants, falsely, recklessly, grossly negligently, and/or negligently stated, "wow, so, that lady [Plaintiff] wound up kinda ripping you off?" Defendants published into this district that Plaintiff had stolen merchandise and acted criminally.

42. On October 4, 2017, Defendant Gorga, acting in concert with the other Defendants, jointly and severally, responds "yes" and then furthered the falsehood that Plaintiff snuck into Envy in the middle of the night and stole clothing.

43. Plaintiff owned the merchandise that she retrieved from Envy on the morning of January 1, 2017.

44. These false and misleading statements about Plaintiff were published on national television within this district where Plaintiff is a citizen, resides, and has her primary residence as part of the community, by Defendants, each and every one of them acting individually and in concert, and the falsity of the statements caused injury to Plaintiff.

45. Plaintiff removed her merchandise and other materials from Envy during the morning of January 1, 2017, in broad daylight, not during "the middle of the night." The

statement that Plaintiff "snuck in in the middle of the night" is false and misleading and made with actual malice.

46. The clothing and other materials that Plaintiff removed during broad daylight on the morning of January 1, 2017 belonged to – and were owned by – Plaintiff. The statement "that lady [Plaintiff] wound up kinda ripping you off" is false and misleading and made with actual malice.

47. This statement also impugns that Plaintiff committed the crime of stealing, a felony in Florida if the amount allegedly stolen is worth more than $300. Emptying out Envy would be more than stealing $300 worth of merchandise.

48. Defendants knew or had reason to know that their statements were false and misleading because they were on notice since February 23, 2017 when counsel for Plaintiff at the time, Peter Tanella, sent correspondence to Defendant Melissa Gorga and Defendant NBC Universal.

49. In the correspondence sent to Mr. Hitchner (Defendant Gorga's counsel), Mr. Tanella warned "[w]e have serious concerns, considering your client's [Defendant Gorga] past behavior, that she will defame Ms. Robinson through social media, particularly during production of "The Real Housewives of New Jersey" series. Please be advised that, in the event your [sic] Ms. Gorga defames Ms. Robinson, either directly or indirectly, we have been instructed to take immediate legal action against your client, wherein our client will seek restraints, damages, costs and attorneys' fees."

50. Moreover, Mr. Tanella also send an earlier email to Mr. Hitchner on January 9, 2017 at 7:12 PM, stating: "[l]astly, it has been brought to my attention that your client [Defendant Gorga] has made false and slanderous comments about my client. These actions must

cease and desist immediately. Should your client continue to make such slanderous statements my client shall be compelled to consider legal action against your client for slander and defamation."

51. Defendant Gorga knew not to defame Plaintiff since around January 9, 2017, when Mr. Tanella placed her attorney on notice that the slanderous and defamatory statements she publicly made "must cease and desist."

52. Despite the warnings, on October 4, 2017, Defendant Gorga, by and through each and every Defendant, jointly and severally, defamed Plaintiff with actual malice.

53. Similarly, on February 23, 2017, Mr. Tanella warned NBC Universal to "[t]he purpose of this correspondence is to notify NBC Universal and all entities [and persons] involved with the production of the Series ["The Real Housewives of New Jersey"] that we have placed Ms. Gorga on notice that she is to refrain from making any defamatory statements, directly or indirectly, about Ms. Robinson through social media, including in connection with the Series. In the event that Ms. Gorga makes any such defamatory statements concerning our client through the broadcast of the Series or any promotional aspect of the Series, please be advised that we intend to take immediate legal action against your company, Ms. Gorga and/or any person or entity who aids MS. Gorga in making such defamatory statements, wherein our client will seek restraints, damages, costs and attorneys' fees."

54. Defendants NBC Universal, Andy Cohen, and Dorothy Toran were on actual notice since February 23, 2017 that they would be haled into court and held liable for defamation and related causes of action if any person or entity aids Defendant Gorga in making defamatory statements.

55. The false impression of Plaintiff, which Defendants created, caused irreparable harm to Plaintiff, her reputation, and her business and person.

**SECOND CAUSE OF ACTION**
**(Defamation Per Se)**
**Each and Every Defendant**

56. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

57. The Defendants, together and each of them acting in concert, jointly and severally, and individually, have defamed Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff which they knew or should have known to be false and misleading.

58. Defendants' defamatory statements were not privileged.

59. A statement is defamatory per se if, among other things, it falsely imputes to another a criminal offense amounting to a felony, or conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office. *See Campbell v. Jacksonville Kennel Club, Inc.*, 66 So.2d 495, 597 (Fla. 1953).

60. A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. *See Montgomery v. Knox*, 23 Fla. 595, 3 So. 211, 217 (1887). "[T]he law presumes malice in their utterance," *Abraham v. Baldwin*, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are " . . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. *Layne v. Tribune Co.*, 108 Fla. 177, 146 SO. 234, 236 (1933).

61. On October 4, 2017, during the airing of "The Real Housewives of New Jersey," Defendant Gorga, acting in concert with the other Defendants, jointly and severally, falsely, recklessly, grossly negligently, and/or negligently stated that Plaintiff "snuck in in the middle of the night and took all the clothes."

62. Further, on October 4, 2017, during the airing of "Watch What Happens Live with Andy Cohen," Defendant Cohen, acting in concert with the other Defendants, jointly and severally, falsely, recklessly, grossly negligently, and/or negligently stated, "wow, so, that lady [Plaintiff] wound up kinda ripping you off?" Defendants published into this district that Plaintiff had stolen merchandise and acted criminally.

63. On October 4, 2017, Defendant Gorga, acting in concert with the other Defendants, jointly and severally, responds "yes" and then furthered the falsehood that Plaintiff snuck into Envy in the middle of the night and stole clothing.

64. Plaintiff owned the merchandise that she retrieved from Envy on the morning of January 1, 2017.

65. These false statements about Plaintiff were published on national television by Defendants, each and every one of them acting individually and in concert, and the falsity of the statements caused injury to Plaintiff.

66. Plaintiff removed her merchandise and other materials from Envy during the morning of January 1, 2017, in broad daylight, not during "the middle of the night." The statement that Plaintiff "snuck in in the middle of the night" is false and misleading and made with actual malice.

67. The false and defamatory nature of Defendants' published statements subjected Plaintiff to ridicule, hatred, disgust, and contempt.

68. The clothing and other materials that Plaintiff removed during broad daylight on the morning of January 1, 2017 belonged to – and were owned by – Plaintiff. The statement "that lady [Plaintiff] wound up kinda ripping you off" is false and misleading and made with actual malice.

69. This statement also impugns that Plaintiff committed the crime of stealing, a felony in Florida if the amount allegedly stolen is worth more than $300. Emptying out Envy would be more than stealing $300 worth of merchandise, a felony.

70. Defendants knew or had reason to know that their statements were false and misleading because they were on notice since February 23, 2017 when counsel for Plaintiff at the time, Peter Tanella, sent correspondence to Defendant Melissa Gorga and Defendant NBC Universal.

71. In the correspondence sent to Mr. Hitchner (Defendant Gorga's counsel), Mr. Tanella warned "[w]e have serious concerns, considering your client's [Defendant Gorga] past behavior, that she will defame Ms. Robinson through social media, particularly during production of "The Real Housewives of New Jersey" series. Please be advised that, in the event your [sic] Ms. Gorga defames Ms. Robinson, either directly or indirectly, we have been instructed to take immediate legal action against your client, wherein our client will seek restraints, damages, costs and attorneys' fees."

72. Moreover, Mr. Tanella also send an earlier email to Mr. Hitchner on January 9, 2017 at 7:12 PM, stating: "[l]astly, it has been brought to my attention that your client [Defendant Gorga] has made false and slanderous comments about my client. These actions must cease and desist immediately. Should your client continue to make such slanderous statements

my client shall be compelled to consider legal action against your client for slander and defamation."

73. Defendant Gorga knew not to defame Plaintiff since around January 9, 2017, when Mr. Tanella placed her attorney on notice that the slanderous and defamatory statements she publicly made "must cease and desist."

74. Despite the warnings, on October 4, 2017, Defendant Gorga, by and through each and every Defendant, acting jointly, severally, and in concert, defamed Plaintiff with actual malice.

75. Similarly, on February 23, 2017, Mr. Tanella warned NBC Universal to "[t]he purpose of this correspondence is to notify NBC Universal and all entities [and persons] involved with the production of the Series ["The Real Housewives of New Jersey"] that we have placed Ms. Gorga on notice that she is to refrain from making any defamatory statements, directly or indirectly, about Ms. Robinson through social media, including in connection with the Series. In the event that Ms. Gorga makes any such defamatory statements concerning our client through the broadcast of the Series or any promotional aspect of the Series, please be advised that we intend to take immediate legal action against your company, Ms. Gorga and/or any person or entity who aids MS. Gorga in making such defamatory statements, wherein our client will seek restraints, damages, costs and attorneys' fees."

76. Defendants NBC Universal, Andy Cohen, and Dorothy Toran were on notice since February 23, 2017 that they would be haled into court and held liable for defamation and related causes of action if any person or entity aided Defendant Gorga in making defamatory statements.

77. The false impression of Plaintiff, which Defendants created, caused irreparable harm to Plaintiff, her reputation, and her business and person.

**<u>THIRD CAUSE OF ACTION</u>**
**(Defamation by Implication)**
**Each and Every Defendant**

78. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

79. The Defendants, together and each of them acting in concert, jointly and severally, and individually, have defamed Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff which they knew or should have known to be false.

80. Defendants' defamatory statements were not privileged in any manner.

81. Defamation by implication is an intentional tort recognized in Florida. *See Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

82. Defendants, together and each of them acting in concert, jointly and severally, and individually, published false statements about Plaintiff and these statements were defamatory in that they created a false impression of Plaintiff.

83. Defendants, together and each of them acting in concert, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

84. A reasonable person would understand Defendants' statements to impart the false innuendo, which would be highly offensive to a reasonable person.

85. Defendants, each and every one of them, intended or endorsed the defamatory inference that the published statements created and these false and defamatory statements were made with actual malice.

86. The false impression of Plaintiff, which Defendants created, caused irreparable harm to Plaintiff, her reputation, and her business and person.

**FOURTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**
**Each and Every Defendant**

87. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

88. Defendants, together and each of them acting in concert, jointly and severally, and individually, have defamed Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff which they knew or should have known to be false.

89. The defamatory statements described herein constitute outrageous conduct against Plaintiff.

90. Defendants, each and every one of them, acting individually and in concert, intended to cause Plaintiff to suffer emotional distress, or in the alternative, Defendants or their agents engaged in the defamatory conduct with reckless disregard of the high probability of causing Plaintiff to suffer emotional distress.

91. A reasonable person in Plaintiff's position would consider Defendants' conduct outrageous.

92. Plaintiff suffered severe emotional distress and the outrageous conduct of Defendants was a cause of the emotional distress suffered by Plaintiff.

**FIFTH CAUSE OF ACTION**
**(Tortious Interference with Prospective Business Relationships)**
**Each and Every Defendant**

93. Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

94. Plaintiff, at the time of this incident, maintained numerous existing business relationships throughout the country and this district by virtue of her international reputation and business and personal success as a fashion influencer and entrepreneur.

95. Defendants, each and every one of them, acting jointly and severally, had actual knowledge of these relationships.

96. Defendants, each and every one of them, intentionally and without justification, interfered with Plaintiff's business relationships by defaming Plaintiff.

97. Plaintiff in fact suffered damages as a result of the Defendants' interference, including irreparable harm to her reputation and the reputation of her business adventures in her community and throughout the country and the world.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jackie Beard Robinson prays for relief and judgment against all named Defendants, each and every one of them, jointly and severally, as follows:

(a) For general (non-economic), special (economic), actual and compensatory damages in excess of $10,000,000;

(b) For consequential damages in a sum reasonable to a jury;

(c) For punitive damages in excess of $20,000,000, or at least 5% of each of Defendants' net worth, whichever is greater, to punish and impress upon Defendants the seriousness of their conduct and to deter similar conduct in the future;

(d) For attorneys' fees, expenses, and costs of this action; and;

(e) For such further relief as this Court deems necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

**Plaintiff demands a trial by jury on all counts as to all issues so triable.**

Dated: December 6, 2017

Respectfully submitted,

*/s/ Larry Klayman*

Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
Florida Bar No. 246220
7050 W. Palmetto Park Rd, #15-287
Boca Raton, FL, 33433
Tel: (561)-558-5536
Email: leklayman@gmail.com

Attorney for Plaintiff